DAN M. LEE, Justice,
for the Court:
This appeal stems from an action before the Circuit Court of Harrison County, in which the plaintiff, Red Gate Corporation, sued the defendant, Dickie Joe Ladner, for damages resulting from an alleged breach of a lease of real property. The lease in question was for the agricultural use of a farm owned by Red Gate Corporation and located in Pearl River County, Mississippi.
Red Gate Corporation asserted that Lad-ner committed various acts of mismanagement, negligence, and waste during his tenancy on the farm. These included: failure to repair fences; destruction of gates, farm dams, hay pens, a wooden bridge, and cattle pens; permitting erosion; removal of fences, fuel pump, diesel fuel, drag harrow, and hay; and excessive planting over the acreage allowed in the lease. The jury returned a verdict for the defendant. The plaintiff has appealed, alleging, among other things, that the jury’s verdict was contrary to the law and the testimony. We find that the jury’s verdict was supported by sufficient evidence and affirm as to all items except the 250 bales of hay removed by the appellee. With respect to that issue, we reverse and remand for a determination of damages.
Red Gate Corporation owns approximately 838 acres in Pearl River County, Mississippi. In March, 1979, Red Gate leased this property to Dickie Joe Ladner, for the purposes of planting soybeans and raising cattle. Paragraph (9) of the lease read as follows:
(9) The Lessee agrees that the Lessor on this day has left 250 bales of hay on the farm belonging to the Lessor herein and Lessee does hereby agree that upon the end of this agreement that the Lessor will be provided 250 bales of hay of equal quality or pay Lessor the actual cash value of 250 bales of hay of equal quality to Lessor at the date of the termination of this lease.
Additionally, paragraph (16) contained this language:
(16) It is further understood and agreed that at the termination of this lease, Lessee shall have thirty (30) days time to remove any crops, belonging to him, from the premises.
The terms of the lease contemplated that it would terminate on April 30, 1981. On May 1, 1981, Red Gate leased the property to Dossie Barber. However, Barber encountered difficulty in taking possession of the farm. Mr. Ladner’s cattle still occupied the farm at that time, and Barber was reluctant to mix the two herds. He attempted to pen Ladner’s cattle; however, Ladner and his crew returned to the farm and released them. Ladner’s cattle were not removed from the farm until May 23, 1981.
At trial, conflicting evidence was presented relative to the condition of the farm before and after its lease to Ladner. What was undisputed, however, was the fact that when Mr. Ladner took possession of the farm, there were 250 bales of hay on it. Ladner was to return the equivalent in either hay or cash at the end of the lease; however, he returned neither. His position at trial was that he intended to replace the 250 bales of hay with rye grass that he had growing on the farm, but that his performance of this term of the contract was made impossible by Dossie Barber’s plowing up his field. According to Ladner, Barber had the rye grass plowed up almost as soon as he took possession of the farm on May 1.
Ladner’s defense of impossibility of performance appears to be both inadequately supported by the law and evidence, and inconsistent with other testimony. Dossie Barber testified that he plowed up some of Ladner’s rye grass after taking possession of the farm, but that he was prevented from completing that task by the problems with the cattle. Ladner’s testimony on that point differs substantially and is as follows:
*1149 “Q. Did you in fact cut any hay on the Red Gate property?
A. Not in 1981, sir.
Q. What specifically did Mr. Barber plow under during May of 1981?
A. He plowed under two hundred and fifty acres of rye grass plus an additional thirty acres of permanent pasture.
Q. This was all done at what time period?
A. From May 1 to probably May 3rd.”
This testimony directly contradicts the evidence given in support of Ladner’s reason for leaving his cattle on the farm until May 23rd. Ladner asserted that he had the right to keep his cattle on the farm under the provision of the lease that allowed him thirty days after its expiration to harvest his rye grass crop. He alleged that he was using his cattle to “harvest” his rye grass. In support of this contention, Ladner presented testimony from several experts to the effect that rye grass was a crop which could be harvested until June 1. His own testimony was as follows:
“Q. Now, you ran the cattle on your rye grass until May 23rd, 1980 [sic], did you not?
A. That’s correct, sir.
Q. You never took them off of that farm at all?
A. The steers, no, sir.
Q. Knowing at all the time that the cattle and your lease expired on April 30th, of that year, did you not?
A. That’s exactly right, sir, but we had an option to remove our crop.... ”
Either Ladner had rye grass on the property on May 23, 1981, or he did not. If, as he alleged, the rye grass and pasture had been completely plowed under by Barber by May 3rd, then it seems inconceivable to us that Ladner would have kept his cattle on the farm until May 23rd. The only logical conclusion is that Ladner could have attempted to replace some or all of the 250 bales of hay with rye grass, but chose not to do so.
Two other issues preclude our agreement with Ladner’s excuse for his failure to perform this part of the contract. First, his claim that performance was made impossible, even if accepted by this Court, relies on the alleged conduct of Barber, who was not a party to the contract between Ladner and Red Gate. Only the conduct of a party to the contract, or his agent, can be used as an excuse for failure to perform. Old Ladies Home Association v. Hall, 212 Miss. 67, 52 So.2d 650, sugg. of error overr., 212 Miss. 84, 54 So.2d 170 (1951). Second, Ladner was obligated, under the terms of the contract, to return to Red Gate either 250 bales of hay, or their equivalent cash value. Thus, even if delivery of the hay were made impossible, Ladner was still obligated to pay for it. He did neither, and we find no justifiable legal defense for his failure to do so. For this reason, we find that the evidence and law point overwhelmingly in favor of the appellant and, therefore, reverse the verdict of the jury. Russell v. Cook, 234 So.2d 914 (Miss.1970). We therefore remand this case for a new trial on the issue of the value of the 250 bales of hay.
As to the other items of damages sought by the appellant, we find that the evidence conflicted as to the condition of Red Gate’s farm before and after the lease to Ladner. The credibility of that evidence was for the jury to decide, and we will not disturb their verdict. Jackson v. Griffin, 390 So.2d 287 (Miss.1980).
We have reviewed the appellant’s remaining assignments of error and hold that they are without merit. Therefore, we affirm the verdict of the jury in all respects, save for the 250 bales of hay, for which Ladner is liable to Red Gate Corporation either in kind or in equivalent cash value as of May 1, 1981. We reverse the verdict on this issue and remand for a determination of the damages required to satisfy this liability.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.